ACTION ALLIANCE FOR SENIOR CITIZENS OF GREATER PHILADELPHIA, INCORPORATED by Frank Bradley, President, et al., Plaintiffs,

v.

Milton J. SHAPP et al., Defendants.

Civ. A. No. 74–1612.

United States District Court,
E. D. Pennsylvania.

June 7, 1977.

---

Douglas G. Dye, Norman H. Stein, Community Legal Services, Inc., Law Center Northeast, Philadelphia, Pa., for plaintiffs.

Lawrence Silver, Deputy Atty. Gen., Chief, Civil Litigation, Dept. of Justice, Harrisburg, Pa., for defendants.

Before ADAMS, Circuit Judge, and HUYETT, 3rd and GREEN, District Judges.

## MEMORANDUM

HUYETT, District Judge.

Plaintiffs have appealed an Order by the Clerk of the Court taxing costs against them in the amount of $1013.25. The plaintiffs' complaint challenged the constitutionality of the Pennsylvania Senior Citizens Property Tax Assistance Act on the theory that both the due process and equal protection clauses of the Fourteenth Amendment to the Constitution were violated because the Act denies relief to renters who receive public assistance from the Pennsylvania Department of Welfare. Applying the more relaxed standard of review applicable to social and economic regulation, we found the distinction between those renters who do receive public assistance and those who do not a rational classification in view of the legislative goals. Further, we held that the legislative classification did not implicate the due process doctrine of irrebuttable presumptions. 400 F.Supp. 1208 (E.D.Pa. 1975).

Invoking 28 U.S.C. § 1920, Rule 54(d) of the Federal Rules of Civil Procedure, and Rule 38(b) of the Local Rules of Civil Procedure, the Commonwealth defendants on August 12, 1975 submitted to the Clerk their bill of costs, seeking $1013.25, including in particular $944.50 in deposition costs. Argument was heard before the Clerk on May 27, 1976 and on December 10, 1976 the Clerk entered an Order taxing costs in the full amount sought by the Commonwealth.*

There is no disagreement between the parties as to the governing principles of law. Rule 54(d) provides that "costs shall be allowed as of course to the prevailing party unless the court otherwise directs," and 28 U.S.C. § 1920 lists expenses that are allowable as costs. Among the expenses that are taxable are the "[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case" and "[f]ees for . . . copies of papers necessarily obtained for use in the case." 28 U.S.C. § 1920(2) and (4). These provisions, coupled with the broad authorization of the Federal Rules to make use of depositions, confer the power to tax deposition expenses as costs. The prevailing view holds that this discretionary power should be exercised where those expenses

---

\* We note the delay of almost seven months that ensued between the hearing on the bill of costs before the Clerk and his decision and that he stated no reasons in support of his decision. Henceforth, the Clerk should endeavor to dispose of these matters promptly, and in cases involving thorny issues calling for the informed exercise of discretion, a short statement of reasons should be included in the Order.

are "reasonably necessary" to prosecuting the case. *See generally* 6 *Moore's Federal Practice* ¶ 54.77[4], at 1718–25 and cases cited therein.

■ Plaintiffs urge upon us the error of taxing any costs against them in view of the fact—which we do not dispute—that this case was a good faith effort on the part of various individual indigents and two organizations to vindicate what they perceived to be an unjust and unconstitutional flaw in the Pennsylvania Senior Citizens Property Tax Assistance Act. They further contend that the spectre of taxed costs will have a chilling effort on poor persons contemplating legal actions. Although we do recognize that the power to tax costs should be exercised in a manner that does not bar the door to the courthouse to indigent plaintiffs, see *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964), we note that two of the plaintiffs are organizations with substantial memberships. The Action Alliance for Senior Citizens of Greater Philadelphia is an umbrella organization, composed of two hundred member organizations, each with its own membership. By the same token, the Philadelphia Welfare Rights Organization has 3500 individual members. We do not assume that either of these organizations is lavishly financed. Yet we cannot help but note that a $1013.25 levy, if shared by the two groups, would result in a cost of far less than $1 to each individual member. At least where the interests of indigents are represented by large organizations, we see no reason to exempt them from the costs of their unsuccessful litigation. Moreover, we rather doubt that organizations such as these, serving as a unified voice for a particular interest group in the courts and in the political arena, will be deterred from vigorous advocacy by the prospect of having to pay costs in their unsuccessful lawsuits. This case is a far cry from the situation in *Farmer*, supra, where the effect of the costs award sought by the prevailing defendant would have been to discourage less affluent plaintiffs from prosecuting good faith claims. In *Farmer*, the defendant oil company sought to tax costs of $6600 against a single plaintiff who unsuccessfully litigated a $4000 breach of contract claim. Included in defendant's bill of costs in that case was a claim for the cost of transporting two witnesses from Arabia to New York and the cost of daily transcripts of the trial record. The Supreme Court in *Farmer* held that the district judge did not abuse his discretion in denying those costs to the defendant even though it was technically the prevailing party.

■ Plaintiffs next claim that we should disallow as an item of costs the expense of seventeen discovery depositions taken by the Commonwealth defendants. The depositions probed factual matters going to threshold issues, none of which were decided favorably to defendants, and it is argued that these issues were insubstantial and part of a strategy by the Commonwealth defendants unnecessarily to prolong the case. We disagree with that characterization. Although the defendants were singularly unsuccessful in pressing these threshold issues, we cannot say that they were frivolous or that they were part of an obstructionist design. Instead we believe they were good faith attempts to develop a factual record for pretrial motions based on lack of standing, lack of capacity to sue, improper solicitation by plaintiffs' counsel, and improper venue. Viewed together, the pretrial motions and the supporting depositions were well within the bounds of vigorous advocacy. Plaintiffs also attack particular depositions as not "reasonably necessary" to the defense of the case. There is no need to review each deposition in detail. It suffices that the case was tried on depositions rather than live testimony and that all of the depositions were offered in evidence. As such, they were "reasonably necessary" to the defense of the case. To immunize an ultimately unsuccessful litigant from paying the cost of litigating non-frivolous procedural issues in a case might inhibit attorneys from vigorously probing sincerely—albeit erroneously—perceived chinks in the opponent's armor at the pretrial stage of the case.

Finally, plaintiffs contend that the defendants are not entitled to reimbursement for the cost of deposition copies, since the extra copies were matters of mere convenience to defense counsel. The convenience to defense counsel in having copies of depositions stems from avoiding a trip to the Clerk's office in order to review deposition transcripts in the course of trial preparation. In the circumstances of this case, where the situs of defense counsel was the Harrisburg, Pa. office of the Pennsylvania Department of Justice, we find that deposition copies were more than a "mere convenience," the cost of which the losing party could be expected to bear. *Cf. United States v. Kolesar*, 313 F.2d 835 (5th Cir. 1963). It would be unrealistic to expect a Harrisburg based attorney preparing for a trial in Philadelphia to use depositions on file in the Clerk's Office in Philadelphia, particularly where the trial record is primarily composed of selected portions of the discovery depositions.

The motion for review and reversal of the Clerk's taxation of costs shall be denied, and the judgment entered by the Clerk on December 10, 1976 for costs taxed in favor of defendants and against the plaintiffs in the amount of $1013.25 shall be AFFIRMED.